IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAN GREEN,

      Plaintiff,

v.                                                          No.

WARDEN JOE CHAVEZ,
NURSE REBECCA GRANGER,
CAPTAIN RON PEREZ, and
JOHN DOE Correctional Officer.

### COMPLAINT FOR THE RECOVERY OF DAMAGES CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS

      Plaintiff brings this complaint for damages caused by the violation of her civil and constitutional rights:  Plaintiff files this complaint under the federal Civil Rights Act, and the Constitution of the United States and New Mexico.  Plaintiff also brings claims under the New Mexico Tort Claims Act.  In support of this Complaint, Plaintiff alleges the following:

### JURISDICTION AND VENUE

1. Jurisdiction over the subject matter of this action is conferred by 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988.  Venue is proper as the acts complained of occurred exclusively within Valencia County, New Mexico.

### PARTIES

2. Plaintiff, Jan Green, is an individual and resident of Valencia County, New Mexico.

3. Defendant Chavez at all material times was the Warden of VCDC.

4. Defendant Chavez was acting under color of state law and within the scope of his employment at all material times.

1

5. Defendant Chavez is sued in his individual and official capacities.

6. Defendant Rebecca Granger at all material times was a nurse practioner in charge of the delivery of healthcare in VCDC.

7. Defendant Granger was acting under color of state law and within the scope of her employment at all material times.

8. Defendant Granger is sued in both her individual and official capacities.

9. Defendant Perez at all material times was a high ranking guard at VCDC.

10. Defendant Perez was acting under color of state law and within the scope of his employment at all material times.

11. Defendant Perez is sued in his individual capacity only.

12. Defendant John Doe at all material times was a guard at VCDC.

13. Defendant John Doe was acting under color of state law and within the scope of his employment at all material times.

14. Defendant John Doe is sued in his individual capacity only.

## FACTS COMMON TO ALL COUNTS

15. Plaintiff Jan Green is a fifty year old grandmother.

16. Despite periodic symptoms of a mental illness, Plaintiff has been able to raise four children and hold full time employment throughout her life.

17. Plaintiff has been employed as a Computer Technical Support Specialist.

18. Plaintiff was a farrier who was able to train and board horses.

19. Plaintiff has successfully raised and educated four children.

20. In July of 2009 Plaintiff's mental illness deteriorated.

21. On July 5, 2009 Plaintiff was arrested on suspicion of committing an act of domestic violence.

22. Plaintiff was booked into the Valencia County Detention Center, (VCDC).

23. On entering VCDC Plaintiff's mental illness was so obvious a note in her jail file describes her suffering from hallucinations and recommends she see a psychiatrist as quickly as possible.

24. Instead of arranging medical treatment, Defendant Captain Perez deploys pepper spray in Plaintiff's face on two occasions.

25. The reason provided by Defendant Perez for this use of force was because Plaintiff had refused to get dressed in jail issued clothing.

26. Due to Plaintiff's obvious mental health condition Defendants placed Plaintiff in a solitary confinement cell (a segregation cell where inmates are isolated from each other).

27. Plaintiff was never taken to see a psychiatrist.

28. On July 21, 2009 Plaintiff was released from VCDC.

29. Two months later, on or about September 13 2009 Plaintiff was again booked into VCDC as a pre trial detainee accused of committing an act of domestic violence.

30. After being strip searched Plaintiff was again assigned to a solitary confinement cell.

31. While in solitary confinement Plaintiff received no medical attention for her obvious mental health needs.

32. Plaintiff's mental health continued to deteriorate while in isolation.

33. On October 23, 2009 Defendants transferred Plaintiff to the Santa Fe County Detention Center.

34. Santa Fe County Detention Center did not house Plaintiff in solitary confinement.

35. Medical staff at the Santa Fe County Detention Center immediately recognized Plaintiff's serious mental health condition and created a treatment plan which included medication, psychiatric care and counseling.

36. Before this treatment plan could be completed, Plaintiff was transported back to VCDC.

37. Plaintiff was again placed in a solitary confinement cell.

38. In December of 2009 Plaintiff's mental health de-compensated to the point she could no longer look after herself, or advocate for her well being.

39. Plaintiff's mental status reached the point where she could no longer understand the legal process and she was found incompetent to stand trial.

40. Plaintiff's daughter made several attempts to visit her mother while she was in VCDC but was refused entry.

41. On one occasion she was told her mother did not want to see her, and on other occasions she was told she was not allowed to see her mother.

42. In January, 2010 Plaintiff was transferred to the Cibola County Detention Center.

43. While at Cibola, Plaintiff was not housed in solitary confinement.

44. While at Cibola Plaintiff was allowed a visit from her daughter.

45. Plaintiff's mental health improved while she was not in solitary confinement.

46. On April 5, 2010 Plaintiff was transferred back to VCDC.

47. Plaintiff was once again housed in solitary confinement.

48. In 2010, Plaintiff spent almost the entire year in solitary confinement in VCDC.

49. In 2011, Plaintiff spent almost the entire year in solitary confinement in VCDC.

50. At some point during this time, due to poor hygiene coupled with lack of exercise and an absence of medical care, Plaintiff's sock rotted into an open wound on her foot.

51. Throughout this time Plaintiff's children made repeated attempts to get their mother medical attention in the jail.

52. The majority of Plaintiff's family lives in Minnesota.

53. On August 15, 2011 Plaintiff's sister called the jail demanding immediate medical care be provided to her sister.

54. Plaintiff's sister described how badly she was being treated and told Defendants Plaintiff was not able to make medical decisions for herself.

55. On August 18, 2011 Defendant Nurse Granger went to see Plaintiff.

56. Defendant Granger found Plaintiff in deplorable conditions and in a psychotic state.

57. Plaintiff told Defendant Granger she was a Doctor and did not need medical help.

58. Plaintiff is not a doctor.

59. Instead of arranging immediate emergency mental health care Defendant Granger wrote in Plaintiff's file; "inmate denies mental health complaints" and left her untreated in her solitary confinement cell.

60. Defendant Granger recently told the Socorro County Commission that she was responsible for providing medical services to the inmates of VCDC.

61. During this meeting, on or about November 13, 2012, Defendant Granger publicly stated her nursing philosophy to inmate care is "you don't do more for your patients than they are willing to do for themselves."

62. Defendant Granger's statements were recorded and published by a reporter for a local newspaper.

63. Defendant Granger's philosophy was clearly applied to Plaintiff throughout her stay in VCDC.

64. In Plaintiff's case, this philosophy amounted to deliberate indifference to an obvious need for medical care.

65. In 2011, Plaintiff's family also contacted Defendant Chavez begging him to help their loved one.

66. Plaintiff's eldest child wrote Defendant Chavez numerous emails telling him the family would sue him if he did not provide immediate medical care for their mother.

67. Defendant Chavez knew Plaintiff had fallen from her bed and sustained a serious head injury.

68. Plaintiff's sister wrote about this head injury and asked Defendant Chavez to help her sister.

69. Plaintiff's family also emailed State Governor Martinez alerting her to the deplorable conditions their mother was being subjected to and requested help from the state.

70. Despite numerous communications placing Defendants on notice of their unconstitutional conduct, Defendants continued to hold Plaintiff in a solitary cell without psychiatric care.

71. Despite the knowledge of a serious head injury Defendant Chavez and Defendant Granger failed to provide the necessary medical attention.

72. On December 7, 2011, after more than two years in solitary confinement as a pre trial detainee, Plaintiff was finally transported to a hospital, the New Mexico Behavioral Health Institute, (NMBHI).

73. On arrival at NMBHI, Plaintiff was described as "thin", "unkempt", "disheveled" and showed symptoms of "psychosis".

74. Plaintiff told NMBHI staff that she was Ana Marie Ford of the Ford Motor Company and explained that she had been kidnapped.

75. Within a few days the staff at NMBHI were able to administer medications which reduced Plaintiff's psychotic symptoms quickly.

76. According to medical records, within five days of her arrival in a hospital, Plaintiff was able to watch TV and interact calmly with other patients.

77. According to medical records, within five days of leaving VCDC Plaintiff's delusional thinking stopped.

78. By December 15, Plaintiff became aware of her personal hygiene and requested a hair cut.

79. On January 1, 2012 medical records indicate Plaintiff was polite to staff and co-patients and offered "no problems".

80. On February 1, 2012 Plaintiff was sent back to VCDC having been treated to competency.

81. On her return to VCDC Plaintiff was again placed in solitary confinement.

82. Plaintiff had to beg for her newly prescribed medications to be administered.

83. A VCDC guard took pity on Plaintiff and opened the door to her solitary confinement cell and said "you don't belong here".

84. For a short time Plaintiff was allowed to walk from her cell and interact with other people in the pod dayroom.

85. The kind hearted guard said "I could lose my job for doing this but this isn't right."

86. On February 9, 2012 the criminal charges against Plaintiff were dismissed and she was released from custody.

87. On Plaintiff's release, VCDC staff refused to give Plaintiff a supply of her medication to take with her.

88. Plaintiff's daughter complained her mother needed some medication until she could arrange for a doctor's visit.

89. Staff at VCDC reluctantly gave Plaintiff 5 days supply of mental health medications as she left the jail.

90. Plaintiff suffered damage from her time in VCDC including pain and suffering and permanent injuries to her mental health.

91. Plaintiff suffers from post traumatic stress disorder as a result of her confinement in VCDC.

### COUNT I: VIOLATION OF SUBSTANTIVE DUE PROCESS: INHUMANE CONDITIONS OF CONFINEMENT / INADEQUATE MEDICAL CARE FEDERAL AND STATE CONSTITUTIONS

92. Plaintiff restates each of the preceding allegations as it fully stated herein.

93. Plaintiff has a substantive due process right under the Fourteenth Amendment to humane conditions of confinement and adequate medical care.

94. Plaintiff has a similar substantive due process right to humane conditions of confinement and adequate medical care under Article II Section 14 of the New Mexico Constitution.

95. Rather than treat Plaintiff's mental health condition, Defendants chose to place her in solitary confinement.

96. Defendants failed to take care of Plaintiff's hygiene after she lost the ability to care for herself.

97. Plaintiff's solitary cell was a converted shower room, not designed for the long term housing of an inmate.

98. Plaintiff's cell had a dripping shower head with no way to turn it on or off from within the cell.

99. Plaintiff slept on a pad on the floor of the broken shower cell, next to an open drain.

100. Defendant Chavez was aware the conditions of Plaintiff's cell were inhumane.

101. Defendant Chavez had created a policy of housing female inmates in an old, dilapidated facility and housing male inmates in the new jail.

102. During numerous Valencia County Commission meetings the inhumane conditions of the old female jail were discussed.

103. County Commissioner Gentry even described the jail where Plaintiff was being held as the "hell hole of this county."

104. County Commissioner Gentry also described the jail where Plaintiff was being held as having a sewer that doesn't work and having female inmates exposed to "toxins".

105. Despite this knowledge of the deplorable conditions of the old jail, Defendant Chavez continues to this day to house female inmates in inhumane conditions.

106. While in solitary Plaintiff did not leave her cell for huge periods of time.

107. While in solitary Plaintiff did not see natural light for huge periods of time.

108. While in solitary Defendants failed to provide constitutionally mandated recreation time each day, such that she did not go outside, or leave her cell for long periods of time.

109. Plaintiff was denied sanitary napkins and feminine hygiene products for extremely long periods of time.

110. Defendant John Doe, whose first name is Jacob, would taunt Plaintiff by waiving sanitary napkins in front of Plaintiff's window.

111. Plaintiff was allowed to bleed on herself for months at a time.

112. When Plaintiff did get a sanitary napkin she was forced to reuse it several times.

113. Plaintiff's clothing became covered in blood.

114. Defendant Perez saw Plaintiff covered in menstrual blood and did nothing to help her.

115. Defendant Perez would deliberately incite Plaintiff by baiting and taunting her.

116. Plaintiff was also denied toilet paper for long periods of time.

117. Plaintiff was forced to wipe herself with paper bags from her sack lunch.

118. Plaintiff's solitary cell became squalid as large numbers of dirty food trays and trash accumulated in her cell.

119. Defendants Chavez, Granger and Perez were aware Plaintiff was unwashed, covered in blood and lived in squalid conditions yet did nothing to address the situation.

120. Defendants failed to provide adequate clothing to Plaintiff such that she was forced to spend long periods of time in a dirty blood stained uniform.

121. Defendants knew Plaintiff's mental condition was deteriorating during her time in solitary confinement.

122. As Plaintiff's condition worsened, her behavior made it obvious she was in need of medical attention.

123. Defendants failed to take reasonable measures to prevent the harm caused by Plaintiff's self-destructive actions, which were worsened by the isolation of solitary confinement.

124. Instead, Defendants punished Plaintiff for the behavior she exhibited, (such behavior being the symptoms of her deteriorating mental health caused by her isolation and lack of medical treatment).

125. Defendant Perez and other guards would punish Plaintiff if she became too noisy or started banging on her cell.

126. Defendant Chavez knew of this punishment and allowed it to continue.

127. Defendants knew Plaintiff faced a substantial risk of serious mental or physical harm if her conditions of confinement did not meet contemporary standards of decency.

128. Defendants acted with deliberate indifference to this risk.

129. Plaintiffs' conditions of confinement amounted to punishment of a pre-trial detainee in violation of the Fourteenth Amendment to the United States Constitution and Article II Section 14 of the New Mexico Constitution.

130. Plaintiff suffered from an obviously serious medical condition which required immediate medical care.

131. Defendants Chavez, Perez and Granger's failure to provide adequate medical care amounted to deliberate indifference in violation of the Fourteenth Amendment to the United States Constitution and Article II Section 14 of the New Mexico Constitution.

### COUNT II: VIOLATION OF PROCEDURAL DUE PROCESS

132. Plaintiff restates each of the preceding allegations as if fully stated herein.

133. Inmates in VCDC generally have access to recreation, visitation, use of the phone, mail, programming services such as group therapy and religious activities, and commissary.

134. Plaintiff was placed into extraordinary periods of solitary confinement.

135. While in solitary Plaintiff had no access to the ordinary services provided to inmates in the jail.

136. Plaintiff was not afforded a hearing before being placed in solitary confinement.

137. While in solitary confinement Plaintiff did not have access to the basic programming and services received by other inmates in the facility.

138. While in solitary confinement Plaintiff was refused telephone calls, mail, visitation, recreation, access to group therapy sessions and commissary.

139. While in solitary confinement Plaintiff's mental health deteriorated to the point she could not advocate for herself.

140. Plaintiff had a due process right to a periodic review of her classification.

141. In placing Plaintiff in solitary confinement for such long periods of time without affording her a hearing, or periodic classification review, Defendants denied Plaintiff procedural due process of law as guaranteed by the Fourteenth Amendment.

## COUNT III: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

142. Plaintiff restates each of the preceding allegations as if fully stated herein.

143. Plaintiff is entitled to be free from discrimination under the Americans With Disabilities Act, 42 U.S.C. § 12131 et seq.

144. Defendants failed to accommodate Plaintiff's mental disability and denied her the benefits and services of the jail by reason of her mental disability.

145. Plaintiff was denied social interaction by reason of her mental disability.

146. Plaintiff was unnecessarily segregated due to her mental disability.

147. Plaintiff was denied reasonable standards of hygiene and medical care due to her mental disability.

148. Plaintiff was denied the usual services and programming offered to other inmates due to her mental disability.

149. Defendant Chavez housed many mentally ill prisoners in solitary confinement.

150. Defendant Chavez had a policy and practice of housing the seriously mentally ill in isolation.

151. Defendant Chavez was aware his jail would receive mentally ill inmates as a matter of routine.

152. Despite this knowledge Defendant Chavez failed to hire the necessary mental health professionals to staff his facility.

153. Instead Defendant Chavez relied on Defendant Granger to provide specialized mental health care for which she was not properly trained.

154. Rather than provide the necessary mental health care and medications to mentally ill inmates, Defendants elected to use solitary confinement and pepper spray to control their behavior.

155. As a proximate and foreseeable result of Defendants' discriminatory acts and omissions Plaintiff suffered injuries including pain and suffering, emotional distress, and exacerbation of her mental illness.

### COUNT IV: CUSTOM AND POLICY OF VIOLATING CONSTITUTIONAL RIGHTS

156. Plaintiff states each of the preceding allegations as if fully stated herein.

157. The Valencia County Board of County Commissioners has delegated the responsibilities of running VCDC to Defendant Chavez.

158. Defendant Chavez is the therefore the final policy maker responsible for the hiring training and supervision of VCDC employees.

159. Defendant Chavez's policies therefore become the customs and policies of the County.

160. Defendant Chavez has created a custom and policy of housing the mentally ill in segregation or solitary confinement.

161. Defendant Chavez has created a policy of isolating mental health patients when they become too difficult or expensive to handle, in general population.

162. Rather than arranging psychiatric care for mentally ill inmates, Defendant Chavez had a policy of sending them to different county jails under contractual agreements designed to address overcrowding.

163. Defendant Chavez's policy caused Plaintiff to be transported to the Santa Fe County Detention Center.

164. Santa Fe immediately recognized Plaintiff's need for medical care and began a plan to address her mental health problems.

165. Defendant Chavez's policy also caused Plaintiff to be transported to Cibola County Detention Center.

166. When it was too expensive to house Plaintiff in another facility, Defendant Chavez's policy resulted in Plaintiff being brought back to VCDC and held in solitary confinement.

167. The policies, customs, decisions, and practices of Defendant Chavez have created a climate within VCDC whereby the mentally ill are deprived of adequate medical care and humane conditions of incarceration.

168. Defendant Chavez has also created a custom and policy of housing female inmates in an old jail, referred to by county commissioners as a "hell hole".

169. Numerous female inmates have been exposed to inhumane conditions of confinement with poorly working sewers, dirt and squalor.

170. Defendant Chavez deliberately selected the female inmate population to be housed in this old jail.

171. Defendant Chavez was aware of, and deliberately indifferent to, the terrible conditions faced by the female inmates in the old jail.

172. Valencia County commissioners discussed these terrible conditions with Defendant Chavez.

173. On or about October 17, 2012 County Commissioner Otero-Kirkham described the conditions faced by the female inmates as "an inhumane situation" and told Defendant Chavez "we need to get those women out of there."

174. On or about October 17, 2012, County Commissioner Gentry told the County Commission and Defendant Chavez that the old jail where the females were being housed was "the hell hole of this county."

175. Despite this knowledge Defendant Chavez continues to house females in a facility described by County Commissioners as inhumane.

176. Defendant Chavez employed Defendant Granger to run the medical department of VCDC.

177. Defendant Chavez knew Defendant Granger was not qualified to provide psychiatric care to inmates such as Plaintiff.

178. Defendant Chavez encouraged Defendant Granger to cut costs in providing medical care to inmates.

179. Defendant Granger consistently attempted to cut the costs of expensive psychiatric medicine required by the mentally ill inmates.

180. Defendant Granger's philosophy of doing no more for patients "than they are willing to do for themselves" resulted in Plaintiff's absence of medical care and psychiatric medications.

181. There is a causal connection between Defendants Chavez and Granger's policies and the violation of Plaintiff's constitutional rights, which amounts to deliberate indifference.

## COUNT V:  STATE TORT FALSE IMPRISONMENT

182. Plaintiff restates each of the preceding allegations as if fully stated herein.

183. Plaintiff was placed in solitary confinement in violation of her constitutional rights.

184. Plaintiff's prolonged detention in solitary confinement was not justified or privileged under state law and therefore constituted false imprisonment.

185. Defendant Chavez is responsible to Plaintiff under the doctrine of respondeat superior for the conduct of his employees.

186. The actions of Defendants were willful, wanton, and in gross and reckless disregard for Plaintiff's rights.

187. The actions of Defendants caused Plaintiff damages including mental and emotional harm, paint and suffering and physical injury.

### COUNT VI: STATE TORTS NEGLIGENT MAINTENANCE OF A BUILDING AND NEGLIGENT OPERATION OF A MEDICAL FACILITY

188. Plaintiff restates each of the preceding allegations as if fully stated herein.

189. Defendants know they are entrusted with the detention of large numbers of mentally ill inmates.

190. Defendant Chavez and Defendant Granger failed to invest enough money into VCDC to adequately care for mentally ill inmates.

191. Defendants owed Plaintiff a duty of care not to house her, and other females, in a manner likely to cause injury.

192. In operating VCDC, Defendants chose to house plaintiff in solitary confinement rather than in a medical facility capable of treating her illness.

193. In operating VCDC, Defendants chose to house Plaintiff and other females, in a building described as the "hell hole of this county."

194. By subjecting Plaintiff to such a long period of solitary confinement in a dirty and squalid jail, Defendants breached their duty to house Plaintiff in a reasonably prudent manner.

195. Such conduct amounts to negligence in running both a jail and a medical facility.

196. Plaintiff suffered injuries as a direct result of Defendants' negligent conduct.

197. As a result of the foregoing, Plaintiff has suffered damages and injuries including but not limited to physical injuries, pain and suffering, and severe psychological and emotional distress.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all counts.

WHEREFORE, Plaintiff requests judgment as follows:

1. Compensatory damages in an as yet undetermined amount, jointly and severally against all Defendants, including damages for attorney's fees and emotional harm.

2. Punitive damages in an as yet undetermined amount severally against the individually named Defendants.

3. Reasonable costs and attorney's fees incurred in bringing this action.

4. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

COYTE LAW P.C.

 /s/ Matthew E. Coyte
Matthew E. Coyte
Attorney for Plaintiff
1000 Second Street NW
Albuquerque, NM 87102
(505) 244-3030